# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BRENDON J. PRETTYMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00299 |
| ) | Judge Trauger |
| LT. THOMAS CONRAD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Brendon J. Prettyman, an inmate in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983. (Doc. No. 1.) He has also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.) The case is now before the court for a ruling on the IFP application and for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**I.     Application to Proceed IFP**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Because it is apparent from the plaintiff's application that he lacks the funds to pay the entire filing fee in advance, his application to proceed IFP is **GRANTED**. Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), the plaintiff is nonetheless assessed the $350.00 civil filing fee. The warden of the facility in which the plaintiff is currently housed, as custodian of the plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the

average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the Davidson County Sheriff's Office to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II.     Initial Review of the Complaint

### A.     PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must view the complaint in the light most favorable to the plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

### B. Allegations of the Complaint

The plaintiff alleges that he was physically assaulted by two other inmates at the Davidson County courthouse on January 31, 2018, and that he informed Sgt. Beach and Lt. Conrad of the assault. (Doc. No. 1 at 8.) These two defendants then referred the plaintiff to Case Manager Hicks, who told the plaintiff that it was the lieutenant's job to deal with such matters. (*Id.*)

The plaintiff alleges that on February 9, 2018, he was inappropriately groped during a pat- down search by Cpl. Emilio Segarra. (*Id.*) Defendant Segarra allegedly told the plaintiff that he thought he felt contraband during the pat-down search, and when the plaintiff challenged Segarra's conduct in extending the search to his private area, Segarra said "it's what I do" and laughed. (*Id.*) The plaintiff then told Sgt. Beach to tell Lt. Conrad that he wanted to press "outside" charges of sexual assault against Segarra. (*Id.*) Even though the plaintiff had previously filed charges against other inmates and Conrad had signed the "prosecution paperwork," Conrad told the plaintiff that he could not file "street charges" against Segarra based on touching during a pat-down. (*Id.* at 9.)

The plaintiff had originally declined to report the matter under the Prison Rape Elimination Act (PREA), but after being told that he could not file other charges against Segarra, the plaintiff asked Cpl. Martinez to call the PREA hotline. (*Id.*) Martinez was allegedly unable to place the call to the PREA hotline due to issues with the plaintiff's phone PIN, and he told the plaintiff that he would have to wait to report the matter to Security Chief Johnson and Jail Administrator Joyner because they were gone for the weekend. (*Id.*) Sgt. Beach subsequently told the plaintiff that Johnson and Joyner had been informed of the incident and were investigating. (*Id.*)

The plaintiff was then returned to his cell, where he refused to "uncuff." (*Id.*) This refusal to comply with the procedure for relinquishing his handcuffs resulted in a "UOF" (presumably, use of force) and an extraction team was assembled.[1] (*Id.*) Two days later, the plaintiff was "transported downtown" in order to file his charges. (*Id.*)

---

[1] Attached to the complaint are the Disciplinary Incident Reports that describe the results of the plaintiff's refusal to comply with orders on February 8 and 9, 2018, including the necessity of using chemical agents to subdue him. (Doc. No. 1 at 11–20.)

4

The plaintiff alleges that Cpl. Skelton distributed sack lunches to inmates on "the upper tier," assisting two other corporals who are not named defendants. (*Id.*) On one occasion, the sack lunches were accidentally dropped from the cart they were carried on, onto the floor by the pod showers. Skelton proceeded to serve these "contaminated sacks" to all the inmates on the upper tier. (*Id.*) The plaintiff notified Lt. Cole, Sgt. Pallak, and Lt. Dial of this incident, but nothing was done. (*Id.*) On February 13, 2018, after another inmate ranted against Cpl. Skelton and his handling of the food service, Skelton, "in what seemed as retaliation," served sack lunches while wearing blue gloves that had been on his hands when he wiped his face and "dug in his eyes (under his glasses)." (*Id.*) Skelton did not serve the plaintiff's sack lunch on this occasion, however, due to the plaintiff's request that Skelton not touch his food or be near his cell. (*Id.*)

The plaintiff sues the following defendants, all in their official capacity only: Lt. Thomas Conrad, Cpl. Emilio Segarra, Sgt. Sean Beach, Cpl. Michael Grauleu, Cpl. Clark Sargent, Cpl. Michael Martinez, Ms. Ruby Joyner, Chief Jamie Johnson, Sgt. Nathan Pallak, Cpl. Milton Skelton, Ms. Beth Gentry, Lt. Timothy Dial, and Lt. Kevin Cole. (*Id.* at 1–2, 4–5.) He does not seek money damages, but requests that the court order an investigation into these defendants, and order them to resign their positions or go on administrative leave until they can prove that they did not wrong the plaintiff. (*Id.* at 10.)

**C.     Analysis**

The plaintiff's complaint seeks relief pursuant to 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, the plaintiff must

allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

Because § 1983 is a vehicle for vindicating federal rights, rather than a source of substantive rights itself, the first step in a § 1983 action is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The plaintiff fails to specify any particular constitutional right that was violated by the conduct he alleges in his complaint. Moreover, because he sues all defendants in their official capacities, he effectively sues Davidson County, the governmental entity they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). While counties and other municipal defendants are "persons" subject to suit under § 1983, municipal liability may only be established if the plaintiff's harm is alleged to have been caused by the execution of an official policy or custom of the municipality, rather than simply the misdeeds of municipal employees. *Id.* at 814–15. "A plaintiff seeking to impose liability under § 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." *Burns v. Robertson Cnty.*, 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). There is no allegation that any harm sustained by the plaintiff was causally linked to any official policy or custom of Davidson County.

Even if the defendants had also been sued in their individual capacities, the court cannot liberally construe the complaint's allegations as supporting any viable constitutional claim. The plaintiff's allegation of an assault at the Davidson County courthouse by two fellow inmates,

which did not result in any repercussions to the other inmates following the plaintiff's report of the assault, is insufficient to state a claim of deliberate indifference to his health or safety under the Eighth Amendment,[2] particularly in the absence of any allegation that the risk of assault was known to the prison guards or that it resulted in any particular injury to the plaintiff. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (prison official liable under Eighth Amendment for failure to protect "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it")

Nor do minor, isolated incidents of sexual touching rise to the level of an Eighth Amendment violation. *See*, *e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859–61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim of "a small number of incidents" of female corrections officer making a pass at him, squeezing his hand, and touching his penis). Here, the plaintiff alleges that his privates were

---

[2] As a pretrial detainee, the plaintiff is protected by the Fourteenth Amendment's Due Process Clause from conduct that the Eighth Amendment would prohibit as against "individuals who have been tried, convicted, and sentenced." *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016). The Sixth Circuit "has made clear that, under the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.'" *Id.* (quoting *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994)).

inappropriately touched on one occasion, during the course of a pat-down search. While sexual harassment or abuse of an inmate by a correctional officer serves no legitimate penological purpose and can clearly constitute an Eighth Amendment violation in certain circumstances, the facts alleged here simply do not support the existence of a colorable Eighth Amendment claim. *See Kelly v. Moose*, No. 3:12-cv-01339, 2013 WL 141132, at *3 (M.D. Tenn. Jan. 10, 2013) (involving substantially similar facts and relying upon, e.g., *Tuttle v. Carroll Cnty. Detention Ctr.*, No. 10–5693, 2012 WL 4215747, at *1 (6th Cir. Sept. 21, 2012) (affirming the district court's conclusion that a pretrial detainee failed to state a claim of constitutional dimension based on allegations that a police officer "grabbed [the plaintiff's] privates and squeezed them really hard" while conducting a pat-down search during booking)).

Furthermore, an inmate who has been assaulted "does not have a constitutional right to have a particular person criminally charged and prosecuted." *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, at *1 (6th Cir. Nov. 9, 1999) (affirming dismissal of claim that defendants had failed to charge or punish another inmate who allegedly raped the plaintiff); *see also Irons v. Trani*, No. 06-cv-02254-LTB-BNB, 2008 WL 821903, at *2, 7 (D. Colo. Mar. 24, 2008) (adopting Report & Recommendation and dismissing Eighth Amendment claim based on prison officials' failure to punish inmate's alleged attacker); *Cullen v. DuPage Cnty., Illinois*, No. 99 C 1296, 1999 WL 1212570, at *3 (N.D. Ill. Dec. 14, 1999) (holding the lack of disciplinary charges against inmate's alleged assailant "is not a basis for a civil rights action"). Nor can the plaintiff state a constitutional claim based on his allegations that his grievances were not taken seriously or handled as he would have desired, because there is no inherent constitutional right to an effective jail grievance procedure in the first place. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422,

1430 (7th Cir. 1996)); *see also Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *2 (6th Cir. Mar. 20, 2018) ("[A]llegations of a failure to act or, more specifically, a failure to adequately investigate an administrative grievance or complaint do not give rise to constitutional violations.") (citing *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008)).

Finally, the plaintiff's allegation that he was served a sack lunch on one occasion after the lunch had fallen to the floor in the area of the pod showers is insufficient to state a constitutional claim. "Knowingly exposing Plaintiff to the risk that his food may be contaminated . . . on one occasion does not rise to the level of a constitutional violation." *Colbert v. Lindamood*, No. 1:18-cv-00030, 2018 WL 2416201, at *7 (M.D. Tenn. May 29, 2018) (citing *Smith v. Younger*, 187 F.3d 638, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999)); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the [prison] food occasionally contains foreign objects . . ., while unpleasant, does not amount to a constitutional deprivation.").

In sum, the plaintiff's complaint fails to state a claim upon which relief can be granted and must therefore be dismissed.

## III.  Conclusion

In light of the foregoing, the plaintiff's IFP application (Doc. No. 2) is **GRANTED**, and the filing fee is assessed in accordance with this order. Because the plaintiff's complaint fails to state a claim upon which relief can be granted, it is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

This order constitutes the final judgment in this action.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge